Filed 8/20/14  In re I.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re I.F. et al., Persons Coming Under the Juvenile Court Law. | C074326 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Jose F.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD233229, JD233230, JD233231, & JD233232) |

Jose F., father of the minors, appeals from the judgment of disposition.  (Welf. & Inst. Code, §§ 356, 358, 395.)[1]  Father argues the court erred by failing to place the minors with him as the noncustodial parent.  He further contends substantial evidence does not support the court's finding that placement with him would be detrimental to the minors.  Finally, father asserts that, if he is considered a custodial parent, substantial

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

evidence did not support removal of the minors because there was no substantial danger to the well-being of the minors and there were other reasonable means to protect the minors without removal from his physical custody. We affirm.

FACTS

The family consists of a father who sees his role as providing support for the family and a mother whose primary responsibility is caring for the four boys ranging in age from ten years to two years old. In October 2012 father reported mother was leaving the minors without supervision while mother claimed she was the victim of father's domestic violence. The parents agreed to a safety plan requiring mother to leave the home and have her contact with the minors supervised by the grandparents. Father filed for divorce and told the social worker mother was abusing prescription drugs. Mother did not leave the home because the parents reconciled, but, by December 2012, mother took the minors and went to live with the maternal grandparents after an argument with father over child support.

In January 2013 the social worker spoke with father who said mother was not happy with the paternal relatives in the house so he told his relatives their supervision was no longer necessary. Father appeared more concerned about his relationship with the mother than about the minors' welfare. In later conversations with the mother, the social worker learned there was a domestic violence incident the day mother left the home and observed fading bruises on mother's arm.

The parents agreed to an informal supervision plan which provided that the minors would remain with the maternal grandparents, who would supervise mother's contact with the minors, and the parents would engage in services. The informal services included drug treatment for mother and an anger management program for father. Mother struggled with services and tested positive for methamphetamine in February and March 2013. Mother entered a residential drug treatment program in March 2013 but was discharged two weeks later and went back to father's home. In April 2013 mother

2

tested positive for marijuana and admitted using both methamphetamine and marijuana daily. Father excluded her from the home for using drugs. On April 10, 2013, the family court removed custody of the minors from the parents and granted custody to a paternal aunt and uncle.

On April 12, 2013, the Sacramento County Department of Health and Human Services (Department) filed petitions to detain the minors due to mother's substance abuse issues and father's failure to protect them by allowing her to care for them unsupervised instead of following the safety plan. At the initial hearing, the court ordered the minors detained.

The jurisdiction/disposition report stated that father said he knew mother was abusing prescription medication, but denied knowledge of her methamphetamine abuse. Mother admitted she had a substance abuse problem, had several positive tests, and there was domestic violence between her and father in September 2012. The oldest child told the social worker his parents hit him. Father admitted yelling at the oldest child but denied hitting or physically abusing him. The sheriff's log from May 2012 through April 2013 showed numerous calls for both domestic violence and mother leaving the minors unattended. The report concluded father was unable to maintain clear boundaries with mother and protect the minors, ignored the safety plan, and repeatedly reconciled with her knowing the risk she posed to the minors.

The Department filed amended petitions adding allegations of physical abuse of the children and domestic violence by the parents. By mid-May 2013 the parents were living together again. At the prejurisdiction hearing in May 2013 the court sustained the amended petitions and set a contested disposition hearing.

At the contested disposition hearing in June 2013 the first social worker assigned to the case testified she had developed the case plan after the minors were detained. The social worker initially referred father to anger management to address the domestic violence issues as well as his anger and reactivity. She was later made aware that there

3

was a separate class for domestic violence and believed that father needed that class as well as joint counseling with the oldest minor to complete his service plan. The social worker was concerned that mother's sobriety was still recent and father would not protect the minors if she relapsed.

The current social worker testified that, by the end of May 2013, father reported he had completed his anger management and parenting classes. She believed father still needed a domestic violence program whether the parents were together or not because they still had to coparent the minors. In their discussions, father was vague about how he would protect the minors from a possible relapse by mother since she was still early in her recovery, suggesting perhaps the paternal grandmother could supervise mother. The social worker said mother did not get much support at home, in part, because father did not understand the recovery process and blamed her for the minors' removal. The social worker believed joint counseling to address support issues was needed. The social worker stated that overall father's visits were positive. However, during visits, the parents talked about both the case and the minors' return. The social worker testified that an academic report for the oldest minor stated he had an intellectual disability and that the parents needed a lot of patience working with him. However, father characterized him as lazy.

Father testified he was told if he did the classes he would get his children back and he has done the classes. He said he now sees the big picture and wants to be involved. He was recently referred to a domestic violence class. He did not think he needed it in real life but would do it for the court.

The current social worker was recalled and testified that she met with the parents on June 14, 2013, and referred father to a domestic violence class. Father kept asking how this was his fault and got so loud security came and the meeting was terminated. She also spoke with the paternal grandmother who had reservations about supervising the

4

mother and the minors because she did not feel she could control mother and feared for the minors' safety.

At argument father's counsel referred to father's pretrial statement, which cited section 361, subdivision (c)(1) as the controlling statute regarding removal and return of the minors. Counsel stated father was requesting return of the minors while continued services were in place. After discussing father's progress and explaining his testimony, counsel said that, while father wanted all four minors returned, father acknowledged that the oldest child might not be ready but that the other three minors could be returned.

In ruling, the court stated that it was father's "lack of understanding of the complexity of the problems that confronts his family" which created the greatest risk of harm to the minors if they were to be placed back in the parents' care. The court recognized both parents had made progress in services but substantial danger to the minors' physical and emotional well-being remained if the minors were returned to the parents. Father's work required him to be away for long periods and he had little understanding of the needs of the minors and what was necessary to meet those needs. Mother was early in her recovery from severe polysubstance abuse and at risk of relapse. Father was learning tools to avoid physical violence when dealing with family members but was still working on applying his new knowledge. The court stated that the parents would not be able to meet the minors' needs until they had addressed their own. The court adopted the recommended findings and orders and set a review hearing.

DISCUSSION

I

Father contends the court erred in failing to place the minors with him as he was a noncustodial parent and the court should have applied the provisions of section 361.2 rather than section 361.

Section 361.2, subdivision (a) states: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the

5

child, *with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300*, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (Italics added.)

In one sense, neither parent was a custodial parent because at the time the petition was filed, custody had been removed from both parents by the family court. However, as defined by the statute, the noncustodial condition must occur when "the events or conditions arose that brought the child within the provisions of Section 300." (§ 361.2, subd. (a).) In this case, those events occurred prior to the family court order of removal, even if some were not alleged until the amended petitions were filed. Therefore, father was a custodial parent and section 361.2, subdivision (a) could not apply.

Moreover, even if father had been a noncustodial parent within the meaning of the statute, he forfeited his claim to return the minors pursuant to section 361.2. The statutory provision is triggered by the request for custody. In the absence of such a request, the statute is inapplicable. (*In re A.A.* (2012) 203 Cal.App.4th 597, 605.) Father never requested custody as a noncustodial parent, instead relying only on section 361, subdivision (c)(1). Accordingly, the court had no duty to consider the application of section 361.2.

II

Father argues substantial evidence did not support a finding that placement with him would be detrimental to the minors or, alternatively, a finding that continued custody would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minors if they were returned home. (§§ 361, subd. (c)(1), 361.2, subd. (a).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the

reviewing court must determine if there is any substantial evidence--that is, evidence which is reasonable, credible, and of solid value--to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

The requirement of finding detriment is a part of section 361.2, subdivision (a). We have concluded that the provisions of that statute do not apply to this case.

This case is governed by section 361, subdivision (c)(1) which provides, in relevant part: "A dependent child may not be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."

The evidence showed mother was early in her recovery from serious polysubstance abuse and needed support and time to succeed. Father had made some progress but still had little understanding of the need to support mother and continued to see the dependency as her fault. Father needed additional treatment for anger control and domestic violence as evidenced by the recent incident when the social worker was trying to discuss the additional plan elements with him. Father still had issues with denial and impatience which had historically led him to physical abuse and domestic violence. He has characterized the oldest minor as lazy regarding schoolwork and did not understand that the minor had intellectual challenges. Despite the services and some increase in

7

understanding, father does not yet appreciate the complexity of the family problems. Further, he has no real plan for protection and supervision of the minors should mother relapse while he is at work except reliance on family members who were previously unsuccessful in protecting the minors from the effects of mother's addiction. Both parents need additional time to work on their own issues before reassuming the burdens of caring for four special needs children. Substantial evidence supports the juvenile court's findings that there was a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minors if they were returned home.

## DISPOSITION

The orders of the juvenile court are affirmed.


      BLEASE      , Acting P. J.


We concur:


    NICHOLSON    , J.


    MAURO    , J.